## Chrisman et al. v. Avil's, Inc., et al.

*Greenwell & Porter*, for plaintiffs.

*Stewart P. Clarke*, for Avil's, Inc., defendant.

*William Hogg, Jr.*, and *John A. Shrader*, for individual defendants.

ERVIN, P. J., February 1, 1952.—This was a bill in equity to restrain Elizabeth Chrisman Avil from vot-

ing or transferring 28 shares of the stock of defendant corporation and restraining the corporation and the other defendants from recognizing any transfer of said stock and for a decree directing Elizabeth Chrisman Avil to return the certificate of stock for cancellation. The bill was filed by Cecelia F. Chrisman, who alleged that she was one of the stockholders of defendant corporation; that on or about July 19, 1951, defendants, J. Thornton Avil and Philip W. Hunt, in an illegal and unlawful attempt to gain control of the corporation, illegally and unlawfully held a directors' meeting, at which meeting they discharged George A. Chrisman as president and treasurer of the corporation, elected defendant, J. Thornton Avil, as president and treasurer of the corporation, broke an employment contract between the corporation and George A. Chrisman, and directed the issuance and sale of 28 shares of stock to defendant, Elizabeth Chrisman Avil; that the action of defendants in issuing said stock was illegal because it violates section 47 of the bylaws of the corporation, because only 24 hours' notice of the directors' meeting was given to George A. Chrisman, because the meeting was not called in accordance with section 23 of the bylaws, because notice of the meeting was not served upon George A. Chrisman in accordance with the bylaws, because the directors, under the bylaws, have no right to remove an officer without proper legal cause; because defendant, J. Thornton Avil, not having been legally elected president, acted illegally in issuing said certificate; because the directors had no right to issue such stock at this time, because such meeting constituted an illegal and inequitable attempt by two directors, as minority stockholders of the corporation, to seize control of the corporation, and because the issuance of the stock was in violation of an agreement between the stockholders. Accompanying the bill were injunction affidavits alleg-

ing that irreparable harm would result to plaintiff and to George A. Chrisman if the injunction sought was not granted. Accordingly, a preliminary injunction was issued upon security entered by plaintiff in the sum of $300, which security was duly entered.

On July 27, 1951, individual defendants filed a petition alleging that George A. Chrisman was a necessary party in interest and praying that he be joined as a party plaintiff, which prayer was allowed and a proper order issued on the same day. Also on July 27, 1951, all defendants filed an answer to plaintiff's bill of complaint, which denied that the action of defendants in issuing stock to Elizabeth Chrisman Avil was illegal and averring that it was properly issued at a regular meeting at which a quorum was present for the legitimate corporate purpose of improving the working capital and liquid position of the corporation and/or to reduce its indebtedness. Defendants also filed new matter, alleging that J. Thornton Avil had been duly elected president and treasurer of the corporation; that, although George A. Chrisman was duly informed of the action taken by the board, he has since that time persisted in holding himself out as president of Avil's, Inc., and prayed for an injunction enjoining George A. Chrisman from acting as president or in interfering with the management and operation of the corporation by J. Thornton Avil. Accordingly, a preliminary injunction was issued upon security entered by the defendants in the sum of $300, which security was duly entered.

Hearings were held before Ervin, P. J., on July 30, 1951, August 2, 1951, and August 14, 1951. On August 28, 1951, both preliminary injunctions were continued until further order of the court. Further hearings were held before Ervin, P. J., on September 26, 1951, and on January 4, 1952. At the conclusion of the testimony it was agreed that the testimony taken on the

preliminary injunctions is to be made a part of the record and used as if it were given in the final hearing.

From the testimony, exhibits and requests we make the following

### Findings of Fact

1. Prior to October 3, 1945, there existed a cleaning and dyeing business under the name of J. Thornton Avil, George A. Chrisman and Philip W. Hunt, trading as Avil's Cleaners & Dyers, with Cecelia F. Chrisman as a limited partner.

2. On October 3, 1945, a corporation, Avil's, Inc., one of the defendants herein, was incorporated under the laws of the Commonwealth of Pennsylvania with an authorized capital of $100,000, divided into 1,000 shares of the par value of $100 each.

3. At the first meeting of the directors of Avil's, Inc., held on December 13, 1945, it was adjudged that the fair value of the assets, business and good will of Avil's Cleaners & Dyers was $65,100 and necessary for the business of the corporation. Accordingly, the property was purchased by the corporation by the issuance of full paid capital stock of the corporation in the aggregate amount of $61,100 and a note of the corporation to the order of Cecelia F. Chrisman in the sum of $4,000, payable within two years from the date thereof, with interest at six percent per annum.

4. A total of 611 shares of capital stock was issued as follows: Cecelia F. Chrisman, 60 shares; J. Thornton Avil, 248 shares; Philip W. Hunt, 55 shares, and George A. Chrisman, 248 shares.

5. The stock was issued in the amounts stated in return for the proportionate interest held by the same parties in the partnership.

6. The original directors of the corporation were George A. Chrisman, J. Thornton Avil and Philip W. Hunt. The original officers of the corporation were

George A. Chrisman, president and treasurer; J. Thornton Avil, vice president, and Philip W. Hunt, secretary. . . .

25. On January 30, 1951, at 5:45 p.m., J. Thornton Avil and Philip W. Hunt personally delivered to George A. Chrisman a written notice of a special meeting of the board of directors to be held on January 31, 1951, at 8 p.m.

26. On January 31, 1951, the special meeting of the board of directors was held. George A. Chrisman did not attend. The remaining directors, J. Thornton Avil and Philip W. Hunt, adopted a resolution reciting that George A. Chrisman had "illegally and without authority" withdrawn funds from the working capital and that "no restitution or satisfactory explanation" had been made and therefore removed George A. Chrisman from the offices of president and treasurer of Avil's, Inc. J. Thornton Avil, having resigned as vice president, was thereupon elected president and treasurer. Bylaw no. 10 was amended to require that shares he owned for only three days would entitle the owner to vote at elections for directors instead of the 20 days previously required. Other business was transacted which is not material to this case.

27. During the following month conferences were held by the interested parties and their attorneys and as a result another special meeting of the board of directors was held on February 28, 1951, which was attended by J. Thornton Avil, George A. Chrisman and Philip W. Hunt. The following actions were taken: The treasurer was directed to pay to J. Thornton Avil accrued salary in the sum of $3,000 to equalize the accrued salary previously taken by George A. Chrisman; Chrisman was elected as president and treasurer, Avil was elected as first vice president and Wm. H. Embick was elected as second vice president; checks, drafts and notes of the corporation were to be signed by George A.

Chrisman, president, and countersigned by J. Thornton Avil or William H. Embick; formal contracts of employment were entered into by the corporation with Chrisman and Avil. Other business was transacted which is not material to this case. . . .

38. On the evening of July 17, 1951, J. Thornton Avil and Philip W. Hunt delivered to Mrs. George Chrisman a letter addressed to George A. Chrisman, notifying him of a special meeting of the board of directors to be held on July 19, 1951. Mrs. Chrisman delivered this letter to George A. Chrisman.

39. On July 19, 1951, the special meeting of the board of directors was held. George A. Chrisman did not attend on advice of counsel. The remaining directors, J. Thornton Avil and Philip W. Hunt, adopted a resolution reciting that George A. Chrisman had breached the employment agreement dated February 28, 1951, and had failed to perform his duties efficiently and in a satisfactory manner and therefore terminated said contract and removed George A. Chrisman from the offices of president and treasurer of Avil's, Inc. J. Thornton Avil, having resigned as vice president, was thereupon elected president and treasurer. Chrisman was elected vice president.

40. At the special meeting of the board of directors held on July 19, 1951, the following letter was received from Elizabeth Chrisman Avil:

"Wayne, Pa., July 18, 1951

To the Officer and Directors
of Avil's, Inc.
330 West Lancaster Avenue
Wayne, Pa.

Gentlemen:

Upon condition that no other shares will be issued by your corporation within one week after issuance to me pursuant to this offer, I hereby offer to purchase

twenty-eight (28) shares of the authorized and unissued, full paid and non-assessable capital stock of your corporation at one hundred forty-four dollars, and twenty-nine cents ($144.29) per share, total $4,040.12, and I hand you herewith my check in that amount in full payment.

Yours truly,

Elizabeth C. Avil"

41. Elizabeth Chrisman Avil is the wife of J. Thornton Avil, the sister of George A. Chrisman and the daughter of Cecelia F. Chrisman.

42. At the special meeting of the board of directors held on July 19, 1951, the following resolution was adopted:

"Resolved That it is hereby determined necessary for the business of the Corporation and in order that its working capital may be preserved or that the risk of its reduction may be reduced to that extent, the offer this day made by Elizabeth C. Avil to purchase from the Company enough of the authorized but unissued common capital stock of the corporation to add not less than $4,000.00 to the cash available for corporate purposes, be and the same is hereby accepted, and the President or a Vice President, and the Secretary of the Corporation be and they are hereby authorized to issue, sign, seal, execute and deliver unto said Elizabeth C. Avil an appropriate certificate for twenty-eight (28) shares of the full paid and non-assessable common capital stock of this corporation of the par value of One Hundred Dollars (100.00) each upon payment by her or for her account into the Treasury of this Corporation of an amount equal to the book value thereof as of April 30, 1951, which is the approximate present book value, namely $144.29 per share, total $4,040.12, said twenty-eight shares to be

issued subject to the condition that the same shall not be sold, assigned or transferred by her or any lawful transferee or subsequent owner without first being offered to the remaining stockholders in proportion to their holdings in accordance with the provisions of the By-Laws, and particularly of paragraph 47 thereof.

"And it is further resolved that the proper officers of this corporation be and they are hereby authorized and empowered to use and apply the proceeds from the issuance and sale of the said twenty-eight (28) shares of stock this day authorized in the payment or reduction of the indebtedness of this corporation to the Bank or to Cecelia F. Chrisman, either or both, or for any other corporate purpose deemed by J. Thornton Avil as President to be necessary or proper and in the best interests of the corporation.

"There being no further business, the meeting on motion duly made and seconded, was adjourned.

/s/ Philip W. Hunt
Secretary"

43. On July 19, 1951, the $4,000 note of the corporation held by Cecelia F. Chrisman was overdue but Cecelia F. Chrisman had not demanded payment thereof nor had she threatened to do so.

44. On July 19, 1951, the working capital of the corporation was in excess of $10,000.

45. J. Thornton Avil never inquired what the item "accrued salaries" meant in the accountant's statement, although he examined them on occasions.

46. The real purpose of J. Thornton Avil and Philip W. Hunt in voting to issue 28 shares of the capital stock to Elizabeth Chrisman Avil was to gain control of the majority of the shares of the corporation, which, prior thereto, had been held by George A. Chrisman and Cecelia F. Chrisman.

47. On July 19, 1951, stock certificate no. 5 of Avil's, Inc., for 28 shares was issued to Elizabeth C. Avil, signed by J. Thornton Avil as president and Philip W. Hunt as secretary.

48. On July 18, 1951, George A. Chrisman issued a call for a stockholders' meeting to be held on July 25, 1951. J. Thornton Avil and Philip W. Hunt were notified but did not attend. The stockholders present, George A. Chrisman and Cecelia F. Chrisman, voted to remove J. Thornton Avil and Philip W. Hunt as directors and elected Cecelia F. Chrisman and J. Montgomery Foster to serve as directors for the unexpired terms. They also voted to protest the issuance of the 28 shares of stock of Elizabeth C. Avil.

49. On July 26, 1951, George A. Chrisman, Cecelia F. Chrisman and J. Montgomery Foster held a directors' meeting at which the following actions were taken: J. Thornton Avil was removed as president and treasurer; George A. Chrisman was elected president and treasurer; the officers were authorized to take legal steps to set aside the issuance of the 28 shares of stock to Elizabeth C. Avil, and the employment contract between the corporation and George A. Chrisman was reaffirmed.

50. There is no provision in the articles of incorporation of Avil's, Inc., granting preëmptive rights to the shareholders thereof.

51. Bylaw no. 47 of Avil's, Inc., reads as follows:

"The capital stock of the Corporation shall be issued subject to the condition that it shall not be sold, assigned or transferred without first being offered to the remaining Shareholders in proportion to their holdings for a period of sixty days, at a price equal to its book value on the first day of the month during which said offer is made, and in the event of the Shareholders failing to purchase during said period any or all of said

stock, the same shall then be offered to the Corporation for a further period of sixty days, at said price."

52. Bylaw no. 23 of Avil's, Inc., reads as follows:

"Special meetings of the Board may be called by the President on one day's notice to each Director, either personally or by wire; special meetings shall be called in like manner and on like notice, on the written request of two Directors."

53. Bylaw no. 20 of Avil's, Inc., reads as follows:

"Any officer or agent elected or appointed by the Board of Directors may be removed by the Board whenever in its judgment the best interests of the Corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed."

## Discussion

This was a bill in equity to restrain defendant, Elizabeth Chrisman Avil, from voting or transferring 28 shares of stock of defendant corporation and restraining the corporation and the other defendants from recognizing any transfer of the stock and for a decree directing Elizabeth Chrisman Avil to return the certificate of stock for cancellation. A preliminary injunction was granted. Defendants, in addition to filing an answer, also filed new matter alleging that although George A. Chrisman, who had been joined as a party plaintiff, had been removed from the office of president and treasurer of the corporation, he still persists in holding himself out as president and prayed for an injunction enjoining him from acting as president or interfering with the management of the corporation. Such a preliminary injunction also issued. We have set forth under the heading "Findings of Fact" 53 separate findings. It is not necessary to repeat them at this time but reference will be made to the material facts and the various questions of law arising.

On July 19, 1951, a special meeting of the board of directors of the corporation was held, at which meeting George A. Chrisman was removed from the offices of president and treasurer of the corporation and J. Thornton Avil elected in his stead. At the same meeting 28 shares of the unissued stock of the corporation were issued to defendant, Elizabeth Chrisman Avil, who is the wife of J. Thornton Avil, the sister of George A. Chrisman and the daughter of Cecelia F. Chrisman. Plaintiff contends that such meeting was illegal because only 24 hours' notice of the directors' meeting was given to George A. Chrisman, because the meeting was not called in accordance with section 23 of the bylaws and because notice of the meeting was not served upon George A. Chrisman in accordance with the bylaws. Section 23 of the bylaws reads as follows:

"Special meetings of the Board may be called by the President on one day's notice to each Director, either personally or by wire; special meetings shall be called in like manner and on like notice, on the written request of two Directors."

Thus, it is clear that 24 hours' notice is sufficient because the bylaws call for "one day's notice". The contention that the meeting was not called in accordance with this section is based on the argument that the words: "special meetings shall be called in like manner and on like notice, on the written request of two Directors." means that the two directors must present a written request to the president, who is still the only one who may call a special meeting. We cannot agree. We feel that the purpose of this bylaw was to provide a method for calling special meetings in situations where the president would refuse to do so. Furthermore, the parties themselves have so construed it. A similar special meeting was held on January 31, 1951, at the call of two directors and although George

A. Chrisman did not attend, he did attend a subsequent meeting in February where the actions of the January meeting were somewhat modified but he did not raise the question at the February meeting that the January meeting had not been properly called. The argument that the notice of the meeting was not properly served on George A. Chrisman cannot prevail. The notice was delivered on the evening of July 17, 1951, to Mr. Chrisman's wife. Mr. Chrisman admitted that she delivered the letter to him but that he did not attend on advice of counsel. We feel that this notice was proper. The bylaws require that the notice be served personally or by wire but it does not follow that the notice must be delivered personally by the persons issuing the call for the meeting. The delivery of the letter by Mrs. Chrisman to George Chrisman was in itself personally serving him. It follows, therefore, that the meeting of July 19, 1951, was a legal meeting.

Plaintiffs contend that the directors had no right to remove Mr. Chrisman as president and treasurer without proper legal cause. Again we cannot agree. Section 407 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-407, provides:

"Any officer or agent elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed."

Similarly, section 20 of the bylaws of the corporation provides:

"Any officer or agent elected or appointed by the Board of Directors may be removed by the Board whenever in its judgment the best interests of the Corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed."

Thus it will be seen that the board of directors may remove an officer without cause. If, however, such removal violates any contract rights the officer so removed has his proper remedy. It follows that Mr. Chrisman was properly removed from office at the meeting of July 19, 1951, and if he has any remedy it is not involved in this action. It further follows that the stockholders' meeting on July 25, 1951, called by him, as president, was not a legal meeting, nor was the directors' meeting held the following day.

Plaintiffs contend that the directors had no right to issue the 28 shares of stock to defendant, Elizabeth Chrisman Avil, at the special meeting of July 19, 1951, because the issuance of such stock violates section 47 of the bylaws and was in violation of an agreement between the stockholders. These contentions raise the question of the preëmptive rights of stockholders. Section 611 of the Business Corporation Law (15 PS §2852-611) provides:

"Unless otherwise provided in its articles, a business corporation may issue shares, option rights or securities having conversion or option rights, without first offering them to shareholders of any class or classes. . . ."

There is no provision in the articles of incorporation of Avil's, Inc., granting preëmptive rights to the shareholders thereof. Plaintiffs contend that this right is granted by bylaw 47, which reads as follows:

"The capital stock of the Corporation shall be issued subject to the condition that it shall not be sold, assigned or transferred without first being offered to the remaining Shareholders in proportion to their holdings for a period of sixty days, at a price equal to its book value on the first day of the month during which said offer is made, and in the event of the Shareholders failing to purchase during said period any or all of

said stock, the same shall then be offered to the Corporation for a further period of sixty days, at said price."

We feel that a reading of this bylaw shows clearly it applies only to the resale of capital stock after it has once been issued and does not apply to the original sale of unissued stock, but regardless of this fact, it still remains that such a provision in the bylaws would be ineffective because the Business Corporation Law provides that such a provision must be in the articles of incorporation. The same reasoning applies to the contention that the issue of stock was in violation of an agreement between the stockholders. Regardless of whether there was such an agreement or not, such a provision must be included in the articles of incorporation to be effective.

This brings us to plaintiffs' final contention that the issuance of the 28 shares to Elizabeth Chrisman Avil was an attempt by the minority stockholders of the corporation to seize control. Here we must agree with plaintiffs' contention. It was pointed out in 1930 in an article by Henry S. Drinker, Jr., on the preëmptive rights of shareholders to subscribe to new shares, in 43 Harvard Law Review 586, that there is an essential distinction between the corporate doctrine of preemptive right and the universally accepted principle requiring the directors, as fiduciaries, not to use their position for their personal advantage or for that of their confederates to the detriment of the shareholders. At page 598 he states:

"Anyone who undertakes to read the numerous decisions which the text-writers, the digests, and the decisions cite as supporting the doctrine of preemptive right, will be surprised, it is believed, to find how very few there are which do not involve either a deliberate attempt by the directors, for their own benefit, to wrest the control from the majority shareholders, or an at-

tempt to deprive the complainants of a substantial interest in the surplus and potential earnings by arbitrarily denying them a right to subscribe to new shares issued at substantially less than their admitted book and market value. The cases of the two latter classes required no new doctrine as a basis for their decision. All involved an obvious breach of the duty of the directors as fiduciaries and would have been similarly decided irrespective of any distinct common law doctrine of preemptive right. The first group are all flagrant breaches of trust."

This subject is treated in Fletcher Cyclopedia Corporations, perm. ed., vol. 11, at pages 218 et seq. and at pages 310 et seq. On pages 222 it is stated:

"The pre-emptive right is not to be confused with the essentially distinct doctrine that directors and officers as fiduciaries shall not use their position of trust for their personal advantage to the detriment of the stockholders, even though the same act may constitute both a breach of such trust and a denial of the pre-emptive right."

See also annotation in 52 A. L. R. 220, on the subject of stockholders' privilege as to acquisition of new issue of stock by corporation (preëmptive right) with the special application of the doctrine to authorized but unissued stock on page 254, supplemented in 138 A. L. R., page 526, the special application being found at page 534. See also 40 Mich. Law Review, page 115.

The fiduciary relationship of directors is incorporated in section 408 of the Business Corporation Law (15 PS §2852-408), which reads as follows:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs."

It was applied in Glenn v. Kittanning Brewing Company et al., 259 Pa. 510, the facts of which are very similar to the present case. There, as here, plaintiffs controlled a majority of the stock but only a minority of the board of directors. On the other hand, defendants, being a majority on the board of directors, issued additional shares to one of their number "for the purpose of paying off the indebtedness of the company". Such additional shares gave defendants the control of the company. The Supreme Court held that the evidence showed the alleged purpose was a subterfuge and that the real, underlying purpose was to obtain control of the corporation. We feel that the same reasoning is applicable to the present case. The resolution authorizing the issuance of the stock states: "in order that its working capital may be preserved or that the risk of its reduction may be reduced to that extent."

However, we do not feel that the evidence supports the contention that Cecelia F. Chrisman, who held a $4,000 note of the corporation, was threatening to demand payment. Mr. Avil testified that George Chrisman had so informed him but Mr. Chrisman denied that he did so. Mrs. Cecelia Chrisman was called as a witness in the case and it is significant that neither plaintiff nor defendants asked her whether she had made such a demand. We have, therefore, found that she made no such demand. Furthermore, the financial statements of the corporation showed that the cash position of the company could have taken care of such a call had it been made or, at least, the borrowing capacity of the corporation was adequate to cover such a situation. We think the real purpose of the issuance of the stock was revealed in Mrs. Avil's letter to the corporation offering to purchase such stock. It says: "upon condition that no other shares will be issued by your corporation within one week after issuance to me

pursuant to this offer, I hereby offer to purchase twenty-eight (28) shares . . . ."

If it were not for the purpose of obtaining sufficient shares to control the corporation, we see no reason why an offer to purchase would be coupled with a provision that no other shares be issued within one week. We feel, and we have so found as a fact, that the real purpose of J. Thornton Avil and Philip W. Hunt in voting to issue 28 shares of the capital stock to Elizabeth Chrisman Avil was to gain control of the majority of the shares of the corporation, which prior thereto had been held by George A. Chrisman and Cecelia F. Chrisman.

It is true that the Glenn case was decided at a time when stockholders had preëmptive rights under the existing law, the Act of July 12, 1923, P. L. 1083, 15 PS §137, and that act was repealed insofar as it relates to business corporations by the Business Corporation Law. However, we feel that this distinction is immaterial. As we have previously stated, the doctrines of preëmptive right and fiduciary relationship of stockholders are separate and distinct. Such was the situation in Schwab et al. v. Schwab-Wilson Machine Corp. et al., 13 Cal. App. (2d) 1, 55 P.(2d) 1268, a California case, where it was held that although stockholders had no preëmptive right to subscribe to new issues of stock under section 287 of the California Civil Code, nevertheless they had the right to demand that directors and officers of the corporation do not use their position for their own personal advantage or to discriminate between stockholders or to so cause stock to be issued as to make a profit for themselves or to obtain or retain control of the corporation.

It follows that the issuance of the 28 shares of stock to Elizabeth Chrisman Avil was a violation of the fiduciary relationship existing between the directors

and the stockholders and that the prayer of plaintiffs' bill must be granted and the shares delivered up and canceled.

We now turn to defendants' counterprayer, which was to restrain George A. Chrisman from acting as president or interfering with the management and operation of the corporation. Considerable testimony was taken concerning Mr. Chrisman's health and his frequent absences from the plant. Also considerable testimony was taken concerning the health of Mr. Avil. In view of our holding that Mr. Chrisman was legally removed from office at the special meeting of July 19. 1951, we deem all such testimony to be irrelevant. The preliminary injunction already issued is restraining Mr. Chrisman from interfering with the corporation's affairs. We will continue such injunction until such time as the corporation is able to hold a stockholders' meeting, with the 28 shares issued to Elizabeth Chrisman Avil being ineligible to vote. What action the stockholders desire to take at that meeting is entirely up to them. It was stated in the testimony that in case of a dispute between the principal stockholders, George A. Chrisman and J. Thornton Avil, the balance of power will be held by Cecelia F. Chrisman, who would vote in favor of the one she deemed right. We have no doubt that she will take into consideration the health of the two men involved in casting her vote at such meeting.

In conclusion, we desire to state we feel that this corporation has been particularly fortunate to survive as well as it has the petty bickerings and jealousies of the principal stockholders. We feel if this is to continue, the corporation will suffer. The only practical solution would seem to be for one side to buy out the other or for all the stockholders to dispose of their stock and divide the proceeds.